No. 26-7231

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

STATE OF CALIFORNIA; SHIRLEY WEBER, PH.D., IN HER OFFICIAL CAPACITY AS THE CALIFORNIA SECRETARY OF STATE; DEAN LOGAN, IN HIS OFFICIAL CAPACITY AS THE COUNTY OF LOS ANGELES REGISTRAR-RECORDER/COUNTY CLERK,

*Defendants-Appellees*,

SERVICES, IMMIGRANT RIGHTS AND EDUCATION NETWORK; MI FAMILIA EN ACCION; LEAGUE OF UNITED LATIN AMERICAN CITIZENS; NAACP; NAACP CALIFORNIA/HAWAII STATE CONFERENCE; NAACP LOS ANGELES BRANCH,

*Intervenors-Appellees*.

On Appeal from the United States District Court for the Central District of California, No. 2:26-cv-12025-DOC-ADS (Carter, J.)

## INTERVENORS-APPELLEES LEAGUE OF UNITED LATIN AMERICAN CITIZENS; NAACP; NAACP CALIFORNIA/HAWAII STATE CONFERENCE; NAACP LOS ANGELES BRANCH'S REPONSE IN OPPOSITION TO THE UNITED STATES'S EMERGENCY MOTION UNDER CIRCUIT RULE 27-3

Norman L. Eisen
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Ave. SE #15180
Washington, DC 20003
(202) 601-8678
norman@democracydefenders.org

Anna M. Baldwin
**CAMPAIGN LEGAL CENTER**
1333 New Hampshire Ave. NW
Suite 300
Washington, DC 20036
(202) 736-2200
abaldwin@campaignlegalcenter.org

*Additional counsel and affiliations on signature page*
*Counsel for League of United Latin American Citizens; NAACP; NAACP California/Hawaii State Conference; NAACP Los Angeles Branch*

# TABLE OF CONTENTS

INTRODUCTION .......... 1

STATEMENT OF THE CASE .......... 2

ARGUMENT .......... 2

I. The United States has no likelihood of success on the merits. .......... 2

A. The United States has no cause of action. .......... 3

B. Nothing in 18 U.S.C. § 611 preempts California's election administration procedures. .......... 7

C. USDOJ's demand is contrary to multiple federal statutes protecting voting rights .......... 10

D. USDOJ's demand will violate voters' constitutional rights .......... 13

E. The United States lacks standing .......... 14

II. The United States cannot demonstrate irreparable harm. .......... 16

A. The United States has not provided any credible evidence that the list it provided to California includes noncitizens. .......... 16

B. The United States's allegations of noncitizen voting have repeatedly been found unreliable. .......... 19

III. The equities and public interest are squarely against the United States. .......... 20

CONCLUSION .......... 23

CERTIFICATE OF COMPLIANCE .......... 25

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ....................................................14

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) (*ITCA*)...5, 9, 10

*Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015) ..........................3

*Austin v. United States*, 155 U.S. 417 (1894) ..........................................................4

*Bond v. United States*, 572 U.S. 844 (2014) .............................................................9

*Burdick v. Takushi*, 504 U.S. 428 (1992) ...............................................................13

*Bush v. Gore*, 531 U.S. 98 (2000) ................................................................4, 13, 14

*Calence, LLC v. Dimension Data Holdings, PLC*, 222 F. App'x 563 (9th Cir. 2007).......................................................................................................3

*California v. Sierra Club*, 451 U.S. 287 (1981)..........................................................8

*Common Cause v. United States Department of Justice*, No. 26-1352, 2026 WL 3033772 (D.D.C. Oct. 9, 2026) ......................................................................20

*Election Integrity Project California, Inc. v. Weber*, 113 F.4th 1072 (9th Cir. 2024) ...........................................................................................................13, 16

*Frazier v. Callicutt*, 383 F. Supp. 15 (N.D. Miss. 1974) .........................................12

*Glossip v. Gross*, 576 U.S. 863 (2015)......................................................................17

*Grand Canyon Skywalk Development, LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196 (9th Cir. 2013) ..............................................................................................................17

*Hedges v. Dixon County*, 150 U.S. 182 (1893)...........................................................6

*INS v. Pangilinan*, 486 U.S. 875 (1988) .....................................................................6

*Lair v. Bullock*, 697 F.3d 1200 (9th Cir. 2012) .......................................................23

*League of Women Voters of United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016)..23

*Merrill v. Milligan*, 142 S. Ct. 879 (2022)................................................................22

*Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025) ................................ 10-12

*Moore v. Harper*, 600 U.S. 1 (2023) ....................................................................4

*Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996)..................................8

*Norwood v. Harrison*, 413 U.S. 455 (1973)..........................................................8, 9

*Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012).................................23

*People Not Politicians v. Onder*, No. 26A388, 2026 WL 2883222 (U.S. Sep. 25, 2026) ..................................................................................................................21

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014) ............................21

*Purcell v. Gonzalez*, 549 U.S. 1 (2006)...................................................................21

*Republican National Committee v. Burgess*, 3:24-CV-00198, 2024 WL 3445254 (D. Nev. July 17, 2024)...........................................................................................16

*Republican Party of Pennsylvania v. Boockvar*, No. 20A84, 2020 WL 6536912 (U.S. Nov. 6, 2020) ...............................................................................................22

*Shivelhood v. Davis*, 336 F. Supp. 1111 (D. Vt. 1971)...........................................13

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) .......................................17

*Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11 (1979).........8

*United States v. California*, 824 F. Supp. 3d 1079 (C.D. Cal. 2026).......................15

*United States v. California*, No. 26-7070, 2026 WL 3212945 (9th Cir. Oct. 26, 2026) (per curiam) .........................................................1, 7, 8, 10, 12, 21

*United States v. Comstock*, 560 U.S. 126 (2010).......................................................9

*United States v. Illinois*, 796 F. Supp. 3d 494 (N.D. Ill. 2025)...............................14

*United States v. Jalas*, 409 F.2d 358 (7th Cir. 1969) ................................................7

*United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877 (C.D. Ill. July 31, 2026)...........................................................................................11

*United States v. Texas*, 599 U.S. 670 (2023).....................................................14, 15

*United States Postal Service v. California*, No. 26A305, 2026 WL 2687160 (U.S. Sep. 14, 2026) ....... 21

*Washington v. Trump*, 145 F.4th 1013 (9th Cir. 2025) ....... 14

*Watson v. Republican National Committee*, 609 U.S. 672 (2026) ....... 5

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) ....... 20

**Constitutional Provisions**

U.S. Const. art. I, § 4, cl. 1 ....... 21

Cal. Const. art. II, § 2(a) ....... 4

U.S. Const. art. I, § 4 ....... 6

**Statutes**

18 U.S.C. § 611 ....... 4, 6

18 U.S.C. § 611(a) ....... 8

18 U.S.C. § 611(a)(1)-(3) ....... 7

18 U.S.C. § 611(a)-(b) ....... 7

18 U.S.C. § 1963 ....... 8

18 U.S.C. § 1964(a)-(b) ....... 8

52 U.S.C. § 10101(a)(2)(A) ....... 12

52 U.S.C. § 10307(a) ....... 13

52 U.S.C. § 10308(d) ....... 5

52 U.S.C. § 10504 ....... 5

52 U.S.C. § 20307(a) ....... 5

52 U.S.C. § 20507(a)(4) ....... 11

52 U.S.C. § 20507(b)(1) ....... 11

52 U.S.C. § 20507(c)-(d) ....................11

52 U.S.C. § 20507(c)(2)(A) ....................12

52 U.S.C. § 20509 ....................11

52 U.S.C. § 20510(a) ....................5

52 U.S.C. § 21083(a)(1)(A) ....................10

52 U.S.C. § 21083(a)(2) ....................10

52 U.S.C. § 21083(a)(2)(A)(i) ....................11

52 U.S.C. § 21085 ....................10

52 U.S.C. § 21111 ....................5

**Codes**

Cal. Elec. Code § 2102(c) ....................5

Cal. Elec. Code § 2111 ....................5

Cal. Elec. Code § 2201(a)(8) ....................5

Cal. Elec. Code § 2201(c) ....................5

Cal. Elec. Code § 2213 ....................5

Cal. Elec. Code § 3019 ....................5

Cal. Elec. Code § 15101-15109 ....................21

Cal. Elec. Code § 15111 ....................21

Cal. Elec. Code § 18560 ....................5

Cal. Elec. Code § 31019 ....................21

**Other Authorities**

16 Stat. 433 (1871) ....................4

Civil Rights Repeal Act of 1894, 28 Stat. 36 (1894) ....................4

Devlin Barrett & Shawn Hubler, *Justice Dept. Pressures California With Expanded Election Investigation*, New York Times (Oct. 29, 2026), https://www.nytimes.com/2026/10/29/us/trump-doj-california-voter-rolls-midterms.html ....................................................................................................3

Jane C. Timm, *DOJ asks Washington state to set aside 400 ballots from voters it says may be noncitizens*, NBC News (Oct. 26, 2026), https://www.nbcnews.com/politics/2026-election/doj-asks-washington-state-set-400-ballots-voters-says-may-noncitizens-rcna605836 ........................................3

Press Release, DHS, DHS Secretary Markwayne Mullin Sends Letters to Secretaries of State Warning About Non-Citizens on Voter Rolls (July 17, 2026), https://perma.cc/C5KH-B83G. ................................................19

Ryan Sabalow & Jeanne Kuang, *What local election officials found in Trump's new claims about California Voters*, Cal Matters (Oct. 27, 2026), https://perma.cc/M5L9-8EED........................................................................20

Sam Levine, *Nearly 200 people wrongly identified on Nevada's voter rolls as non-citizens*, The Guardian (Sep. 25, 2026), https://perma.cc/9VUK-LWWP. .........19

Tierney Sneed, *Trump admin files 'long shot' lawsuit after California wouldn't open a thumb drive of alleged non-citizens*, CNN (Oct. 15, 2026), https://www.cnn.com/2026/10/15/politics/trump-doj-sues-california-non-citizens-voting. ..................................................................................19

## INTRODUCTION

Three days after this Court last rejected the United States's extraordinary request for an order blocking the State of California and Los Angeles County from tabulating ballots from more than 20,000 registered voters in accordance with state and federal law, *United States v. California*, No. 26-7070, 2026 WL 3212945 (9th Cir. Oct. 26, 2026) (per curiam) (*California*), it has returned seeking the same.

The requested relief, if implemented, would disenfranchise eligible voters—the Federal Government is requesting the bulk segregation of potentially thousands of ballots from voters, without specifying the circumstances under which it believes those ballots could be counted. But for many of the same reasons already described by the two concurrences in *California*, the present Emergency Motion Under Circuit Rule 27-3 for Injunction Pending Appeal (Motion) should also be denied, and this Court should clearly articulate that the Federal Government's single claim lacks any legal merit. The United States lacks a cause of action, standing, and cognizable injury. Its request is contrary to federal law and the Constitution, and it cannot demonstrate irreparable harm. Finally, its demand is contrary to the balance of equities and the public interest, particularly in the midst of an ongoing election, as established by the district court's factual and credibility findings.

## STATEMENT OF THE CASE

The factual and procedural background of this case are described in *California*. 2026 WL 3212945, at *1-3. Following this Court's decision, on October 27, the district court held a three-and-a-half hour hearing on the Federal Government's request for preliminary injunctive relief, allowing unlimited time for argument from all parties.[1] The next day, the district court denied the request for a temporary restraining order. Dkt. 149.[2] Before the district court, the Federal Government filed another notice of appeal, Dkt. 152, as well as a Renewed Request for Injunction Pending Appeal, Dkt. 153. The next afternoon, the Federal Government filed the Motion before this Court, seeking relief by October 30.

## ARGUMENT

### I. The United States has no likelihood of success on the merits.

The United States lacks a cause of action and does not have standing, and the remedy sought does not sound in preemption but would in fact violate multiple federal statutes and the U.S. Constitution.[3] To prevent the United States Department

---

[1] The United States falsely states that the district court "did not allow the witnesses to testify." Motion at 15. At the hearing, though USDOJ referenced witnesses, it never sought to call anyone to the stand. D. Ct. Hr'g Tr. at 8:7-11, 11:19-24, 65:8-9 (Hr'g Tr.). The district court expressly granted the parties unlimited leeway for their arguments. Hr'g Tr. at 4:24.

[2] References are to the district court's docket unless otherwise specified.

[3] USDOJ does not attempt to argue several of the bases on which the district court relied in finding that it lacked a likelihood of success on the merits, including that the Federal Government lacked standing, Dkt. 149 at 9-13, and that its claim would

of Justice (USDOJ) from continuing its abusive course of conduct threatening voters and election officials in California and elsewhere,[4] this Court should clearly hold that the United States has no equitable cause of action nor any valid claim of preemption.

### A. The United States has no cause of action.

The United States pleads a violation of the Supremacy Clause, but no cause of action supports the extraordinary remedy sought. As Justice Scalia explained, the Supremacy Clause "creates a rule of decision" and "instructs courts what to do when state and federal law clash," but it "does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015). USDOJ asserts that it is proceeding in equity to protect the United States's sovereign interests, but no legitimate interest of the United States has been impaired by California's or the

likely violate the Civil Rights Act, *id.* at 19-20. USDOJ addresses Article III jurisdiction simply by incorporating previous arguments, and the dissenting opinion in *California*. *See* Motion at 24; *but see Calence, LLC v. Dimension Data Holdings, PLC*, 222 F. App'x 563, 566 (9th Cir. 2007) (not an abuse of discretion to refuse to consider arguments incorporated by reference in contravention of a court's page limitation). It is difficult to fathom how USDOJ can establish a likelihood of success on the merits simply by incorporating arguments that neither this Court nor the district court have accepted, or by declining to address them at all.

[4] Jane C. Timm, *DOJ asks Washington state to set aside 400 ballots from voters it says may be noncitizens*, NBC News (Oct. 26, 2026), https://www.nbcnews.com/politics/2026-election/doj-asks-washington-state-set-400-ballots-voters-says-may-noncitizens-rcna605836; Devlin Barrett & Shawn Hubler, *Justice Dept. Pressures California With Expanded Election Investigation*, N.Y. Times (Oct. 29, 2026), https://www.nytimes.com/2026/10/29/us/trump-doj-california-voter-rolls-midterms.html.

County's actions. USDOJ does not have free-floating authority to initiate coercive litigation to further its preferred policy outcomes, particularly concerning elections.

Instead, pursuant to the Elections Clause, states have primary authority for election regulation "relating to . . . registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns." *Moore v. Harper*, 600 U.S. 1, 29 (2023) (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)). And only officials authorized by state legislatures or Congress have a role in the counting of votes in a federal election. *See Bush v. Gore*, 531 U.S. 98, 113-14, 118-20 (2000) (Rehnquist, C.J., concurring) (legislature did not assign that role to state judges).[5]

As to the invocation of preemption: there is no "clash" here. Both California's Constitution and federal law prohibit non-citizen voting. *See* Cal. Const. art. II, § 2(a); 18 U.S.C. § 611. As the district court explained,

---

[5] In 1871, Congress gave federal officials a role in "count[ing] and canvass[ing] each and every ballot" in certain House elections, including "challeng[ing] any vote offered by any person whose legal qualifications the [federal official] shall doubt" and "prevent[ing] fraudulent registration and fraudulent voting." 16 Stat. 433, 434-36 (1871). This authority applied "any law of any State or Territory to the contrary notwithstanding." *Id.* at 435. But Congress repealed those provisions in 1894. *See* Civil Rights Repeal Act of 1894, 28 Stat. 36 (1894), and has not provided for such power since. Nothing in 18 U.S.C. § 611 gives "any ground for imputing the intention to [C]ongress to revive" that defunct power; "if such had been the intention of [C]ongress, no reason suggests itself why [C]ongress should not have unequivocally said so." *Austin v. United States*, 155 U.S. 417, 433 (1894).

"California enforces its constitutional mandate that only citizens may vote through a series of election laws," Dkt. 149 at 14, including provisions that: require an attestation of citizenship under penalty of perjury to register, *see* Cal. Elec. Code §§ 2111, 2102(c); match signatures on mail-in ballots to those registrations, *id.* § 3019; provide a process to cancel the registration of a voter upon proof that the individual was not eligible, *id.* §§ 2201(a)(8), (c), 2213; and criminalize fraudulent voting by ineligible voters *id.* § 18560. Nothing about California law, therefore, offends the Supremacy Clause. "[S]tate law is preempted by the federal election[] statutes only so far" as an actual "conflict extends." *Watson v. Republican Nat'l Comm.*, 609 U.S. 672, 697 (2026) (citation modified).

A Supremacy Clause issue does not exist where Congress has done nothing to preempt state law. While Congress may "pre-empt state legislative choices" regarding "*how* federal elections are held," it must do so explicitly. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9, 16 (2013) (*ITCA*). Thus, the United States may file civil actions to enforce federal voting rights only when Congress provides an explicit public right of action. *See* 52 U.S.C. §§ 10308(d) (Voting Rights Act (VRA)), 10504 (VRA Amendments of 1970), 20307(a) (Uniformed and Overseas Citizens Absentee Voting Act), 20510(a) (National Voter Registration Act (NVRA)); 21111 (Help America Vote Act (HAVA)). Congress provided public rights of action under these statutes because, unless Congress speaks, the Elections Clause leaves

the administration of federal elections to the states. U.S. Const. art. I, § 4. Congress has not given the United States a right of action to seek injunctive relief pursuant to the only statute it purports to enforce here: 18 U.S.C. § 611.

That there is no equitable cause of action here is further demonstrated by the fact that the relief that the United States is seeking violates multiple federal statutes. *See infra* Section I.C. "[C]ourts of equity can no more disregard statutory . . . provisions than can courts of law." *INS v. Pangilinan*, 486 U.S. 875, 883 (1988) (citation modified). The long-established rule "is that equity follows the law." *Hedges v. Dixon Cnty.*, 150 U.S. 182, 192 (1893). "[W]herever the rights . . . of parties are clearly defined and established by law, equity has no power to change or unsettle those rights." *Id.* Given that the relief sought here violates the NVRA, HAVA, the VRA, the Civil Rights Act of 1960, and the Constitution itself, USDOJ's invocation of equity falls flat. The United States has no vehicle allowing it to barge into federal court, demanding that California and Los Angeles County block the counting of certain ballots until those voters' citizenship has been proven to USDOJ's satisfaction.

### B. Nothing in 18 U.S.C. § 611 preempts California's election administration procedures.

Congress's enactment of a criminal statute against *individual noncitizens* who unlawfully vote does not grant the Executive unilateral authority to restructure California's elections. *California*, 2026 WL 3212945, at *10 (Bennett, J., concurring).

Section 611 provides that "[i]t shall be unlawful for any alien to vote in any" federal elections, except in certain circumstances, and that "[a]ny person who violates this section shall be fined under this title, imprisoned not more than one year, or both." 18 U.S.C. § 611(a)-(b). Notably absent from the statute is any express preemption provision, any language setting forth standards for election administration that might (explicitly or implicitly) prohibit California from mailing and tabulating ballots, or any specifics on how California must deal with ballot challenges. There is likewise no provision authorizing USDOJ to enforce Section 611 by intervening in California's election administration. To the contrary, the statute exempts "aliens [who] are authorized to vote . . . under a State constitution or statute or a local ordinance," explicitly approving of state voter qualification laws. *Id.* § 611(a)(1)-(3).

Criminal prohibitions rarely allow courts to issue civil injunctions against the *target* of the prohibition, let alone *other* actors like California. *See, e.g.*, *United States v. Jalas*, 409 F.2d 358, 360 (7th Cir. 1969) (outlining narrow exceptions).

"The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *California v. Sierra Club*, 451 U.S. 287, 297 (1981). By contrast, where Congress authorizes the executive to pursue both civil and criminal remedies, it has done so clearly. For example, the Racketeer Influenced and Corrupt Organizations Act provides both for criminal penalties, 18 U.S.C. § 1963, and civil relief, *id.* § 1964(a)-(b). But there is no indication here that Congress sought to authorize civil injunctive relief under Section 611. *See Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

Section 611 likewise imposes no specific obligations on state or county election officials. *See* 18 U.S.C. § 611(a); *see also California*, 2026 WL 3212945, at *10 (Bennett, J., concurring) ("A review of § 611 . . . reveals no hidden provision authorizing [USDOJ] to superintend or intervene in a state's election administration."). Where Congress has criminalized certain conduct for private individuals, courts should not presume that it also intended to regulate states' or counties' election administration activities. *Morse v. Republican Party of Va.*, 517 U.S. 186, 250 (1996) (Kennedy, J., dissenting) ("Congress knows the difference between regulating States and other actors."). To avoid this clear deficiency, USDOJ overreads *Norwood v. Harrison*, 413 U.S. 455 (1973) to suggest that liability may

attach to a state through the criminal conduct of private individuals. But *Norwood* was not about preemption. It involved a Mississippi statute that actively supported racially discriminatory schools by providing textbooks to those schools, even though the state could not have run such schools itself. *Id.* at 463-65. By contrast, USDOJ cannot allege California is circumventing any rule since Section 611 plainly does not require California to adopt any particular method of citizenship verification.

USDOJ's additional suggestion that Congress enacted Section 611 pursuant to the Elections Clause—and therefore neither the clear statement rule nor the anti-commandeering doctrine apply, Motion at 30, 35—is unavailing. To start, there is no possibility of preemption in this case under either Supremacy Clause or Elections Clause standards simply because there is no conflict. *ITCA* exempts from the anti-preemption presumption only federal statutes enacted "under the Elections Clause." 570 U.S. at 13-15 & n.6. But as a criminal statute, Section 611 likely comes under the Necessary and Proper Clause, see *United States v. Comstock*, 560 U.S. 126, 135-36 (2010), which is subject to the anti-preemption presumption. *See, e.g.*, *Bond v. United States*, 572 U.S. 844, 857-60 (2014).

At bottom, by arguing that the federal criminalization of noncitizen voting somehow preempts California's election laws, the United States ignores that the power to decide *who* may vote in federal elections and the power to regulate *how* they vote are meaningfully different under the Constitution. *ITCA*, 570 U.S. at 9, 17.

"Prescribing voting qualifications . . . 'forms no part of the power to be conferred upon the national government' by the Elections Clause, which is 'expressly restricted to the regulation of the *times*, the *places*, and the *manner* of elections.'" *Id.* at 17 (quoting The Federalist No. 60 (Alexander Hamilton)). Section 611 does not regulate the time, place, or manner of elections and is not an exercise of Congress's power under the Elections Clause. At most, USDOJ complains that California is not helping it enforce the law in the way it would prefer. But "the possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." *California*, 2026 WL 3212945, at *10 (Bennett, J., concurring) (quoting *Kansas v. Garcia*, 589 U.S. 191, 212 (2020)). There is no preemption here.

### C. USDOJ's demand is contrary to multiple federal statutes protecting voting rights.

The demand that California segregate and ultimately leave uncounted more than 20,000 ballots violates multiple federal laws. Neither this Court nor any other can order such relief. *Id.* at *12 (Bennett, J., concurring).

*First*, USDOJ's proposed injunction conflicts with HAVA and the NVRA, as it would displace those statutes' delegations of authority to the states, not the Federal Government.[6] 52 U.S.C. §§ 21083(a)(1)(A), 21083(a)(2), 21085 (HAVA); *id.*

[6] There is no meaningful distinction between segregating (and ultimately discarding) ballots and dictating voter-removal list maintenance. *Mi Familia Vota v. Fontes*, 129 F.4th 691, 711 (9th Cir. 2025) (NVRA does not allow states to "place individuals' names on the voting rolls but then preclude those who do not provide [documentary

§§ 20507(a)(4), 20507(c)-(d), 20509 (NVRA). Congress limited USDOJ's authority under those statutes to challenging a state's general list maintenance *program*. *Id.* §§ 20507(a)(4) (NVRA), 21083(a)(2)(A)(i) (HAVA) (emphasis added). "Congress did not confer a general auditing power to [US]DOJ over state election officials" to supersede states' list maintenance efforts. *United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877, at *5 (C.D. Ill. July 31, 2026) (citing *West Virginia v. EPA*, 597 U.S. 697, 721-23 (2022)). But that is precisely what USDOJ demands—the ability to replace California's program with its own.

*Second*, the relief sought would conflict with two limitations of the NVRA. The NVRA requires that list maintenance be uniform and nondiscriminatory. 52 U.S.C. § 20507(b)(1). This Court has already concluded that programs like that proposed by USDOJ violate the NVRA. *Mi Familia Vota v. Fontes*, 129 F.4th 691, 714 (9th Cir. 2025) (holding "citizenship checks" were "non-uniform and . . . discriminatory in effect" where challenged law mandated checks of registered voters that election officials had "reason to believe" were noncitizens). That USDOJ's "methodology" "[makes] it likely that the properly registered citizens who would be required to respond and provide documentation would be primarily newly naturalized" and derived citizens underscores the discriminatory nature of the

---

proof of citizenship] from casting vote-by-mail ballots in federal elections"), *cert. granted on a different question sub nom. Republican Nat'l Comm. v. Mi Familia Vota*, 146 S. Ct. 2799 (2026).

requested relief. *Id.* (quoting *United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012)).

The NVRA also imposes a 90-day pre-election moratorium on systematic cancellation programs. 52 U.S.C. § 20507(c)(2)(A). Yet USDOJ seeks to do precisely what this provision prohibits—prevent large "batches" of voters from casting a ballot based on a vague system that it devised.[7] *See Mi Familia Vota*, 129 F.4th at 715; *see also California*, 2026 WL 3212945, *12-13 (Bennett, J., concurring) (explaining how USDOJ's demand would violate the 90-day moratorium).

*Third*, USDOJ's demand also violates the Civil Rights Act (CRA) of 1960. 52 U.S.C. § 10101(a)(2)(A) (prohibiting applying different standards, policies, or practices to determine voter qualifications within same jurisdiction); *see, e.g.*, *Frazier v. Callicutt*, 383 F. Supp. 15, 19 (N.D. Miss. 1974) (finding CRA violation where different procedures were applied to registrants with prior addresses from campus or another county). Applying differential treatment to a "subset of the electorate" "invites county [officials] to pose a barrier to [voting] for any disfavored individual." *Mi Familia Vota*, 129 F.4th at 723-24. The CRA does not permit such

[7] USDOJ halfheartedly suggests that the 90-day moratorium is no bar to its requested relief because it is not systematic and is instead based on individualized information. Motion at 36. This is plainly incorrect, based on the Federal Government's own descriptions of what it is doing. *See* Motion at 33 (describing data matching).

ad hoc alteration of vote tabulation or voter qualification procedures. *See Shivelhood v. Davis*, 336 F. Supp. 1111, 1115 (D. Vt. 1971).

*Finally*, USDOJ's improvised mandate violates Section 11(a) of the VRA. 52 U.S.C. § 10307(a). Because USDOJ seeks to segregate—for an undefined period untethered to any certification deadline—the ballots of voters it admits may be U.S. citizens, the requested relief would result in refusing to "tabulate" eligible voters' ballots. *See* 52 U.S.C. § 10307(a). The Federal Government responds with *ipse dixit*, baldly stating that these are "*un*qualified votes" Motion at 37 (emphasis in original). But USDOJ admits it cannot establish that. Motion at 42. These are all voters who registered pursuant to state and federal law. The VRA would be meaningless if voters who met those procedural and substantive criteria could nonetheless be disenfranchised through unilateral government action.

### D. USDOJ's demand will violate voters' constitutional rights.

The Constitution protects the fundamental right to vote, both from undue restrictions, *see Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1083 (9th Cir. 2024), and unequal treatment, *Bush*, 531 U.S. at 104-05. USDOJ's requested relief violates each of these tenants.

Under the *Anderson-Burdick* framework "severe" burdens on the right to vote must satisfy strict scrutiny. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Because it threatens disenfranchisement, USDOJ's requested relief is a quintessential severe

burden on the right to vote. That relief is even more suspect because it targets naturalized and derived citizens. *Anderson v. Celebrezze*, 460 U.S. 780, 792 (1983).

Allowing votes to be counted under "varying standards to determine what [i]s a legal vote" or "in the absence of specific standards" also violates the Equal Protection Clause. *Bush*, 531 U.S. at 106-07. USDOJ's proposed segregation and undefined citizenship verification process would impose a different standard on a subset of voters in the counting process. Compounding this problem, USDOJ identifies no articulable standard that election workers could uniformly apply. Our Constitution does not tolerate such unequal treatment.

### E. The United States lacks standing.

Standing is "not merely a troublesome hurdle" but fundamental to the separation of powers. *United States v. Texas*, 599 U.S. 670, 675 (2023) (quotation omitted). Article III standing requires a plaintiff to show "injury, causation, and redressability." *Washington v. Trump*, 145 F.4th 1013, 1022 (9th Cir. 2025). While all three elements appear lacking, the total lack of injury that stands out.

*First*, the Federal Government suffers no "sovereign injury" because Defendants have not impeded USDOJ from enforcing 18 U.S.C. § 611. *Cf. United States v. Illinois*, 796 F. Supp. 3d 494, 509 (N.D. Ill. 2025) (finding United States had sufficiently alleged injury where challenged statutes "explicitly prohibit state and local law enforcement from complying with detainers and administrative

warrant" and complaint contained specific examples of concrete injuries arising out of prohibitions); *see also United States v. California*, 824 F. Supp. 3d 1079, 1083 (C.D. Cal. 2026). The Federal Government can, and has, continued to prosecute, including initiating prosecutions of 28 individuals in California the same day it filed its initial motion for preliminary relief. Dkt. 149 at 10; Motion at 11. USDOJ's suggestion that California could take actions that make federal law enforcement *easier* does not establish an Article III injury. Neither California, nor Los Angeles County, is obligated to expend its own resources to enforce federal criminal law in the manner the federal government demands. *See California*, 824 F. Supp. 3d at 1083 (while a state's enforcement of preempted statute may give rise to injury in fact, lack of action does not). The Federal Government has alleged no comparable impairment.

*Second*, the Federal Government does not, and cannot, demonstrate how California's inaction in the face of this demand is a drain on USDOJ's resources. *Cf.* Compl. ¶ 10. Nor does this theory make sense. "[T]he Executive Branch . . . invariably lacks the resources to arrest and prosecute every violator of every law." *Texas*, 599 U.S. at 680. USDOJ does not explain how its desire to enforce 18 U.S.C. § 611's prohibition on noncitizen voting in a different (wholly unauthorized) way, or California's necessary refusal to be commandeered into that effort, requires USDOJ to spend any more resources than it otherwise would.

*Third and finally*, the Federal Government does not have standing based on its allegation of "vote dilution." *See Election Integrity Project California, Inc.*, 113 F.4th at 1087 (explaining legally cognizable claims of vote dilution implicate the "*inequality* of voting power," rather than, as here, the "diminishment of voting power *per se*") (emphasis in original); *see also Republican Nat'l Comm. v. Burgess*, 3:24-CV-00198, 2024 WL 3445254, at *6 (D. Nev. July 17, 2024), *appeal dismissed sub nom. Republican Nat'l Comm. v. Cari-Ann Burgess*, No. 24-5071, 2026 WL 2455132 (9th Cir. Aug. 21, 2026) (listing cases rejecting similar vote dilution theories). In sum, the United States has suffered no cognizable harm.

## II. The United States cannot demonstrate irreparable harm.

### A. The United States has not provided any credible evidence that the list it provided to California includes noncitizens.

The motion also fails on the balance of the equities and public interest. USDOJ's claim of irreparable harm rests on the premise that noncitizens will vote in the upcoming election, but the district court found that USDOJ's allegation that there are more than 20,000 noncitizens on California's voter rolls is "not credible" based on the "vagueness of Plaintiff's descriptions of its procedures and the unreliability of its similar claims in other states," Dkt. 149 at 21-22. These conclusions are subject to "the deferential 'clear error' standard," which "does not entitle [this Court] to overturn a finding" simply if it is "convinced that [it] would

have decided the case differently.'" *Glossip v. Gross*, 576 U.S. 863, 881 (2015) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).

USDOJ offers only a thin reed in response based on the false premise that the district court "declined to examine the witnesses present." Motion at 33. Not so—the Federal Government never called its witnesses, although it was their burden establish its entitlement to relief. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). And even if the district court *had* explicitly declined to hear testimony from Federal Government witnesses, that would not be an abuse of discretion. *See Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196, 1202-03 (9th Cir. 2013) (district court did not abuse discretion when it accepted written report but not testimony).

Under any standard, the district court correctly found that the Federal Government failed to present sufficient detail about the Department of Homeland Security's (DHS) database matching processes, thereby depriving the court of any basis on which to credit such evidence. "[T]he vagueness of Plaintiff's descriptions of its procedures" meant that the district court could not "conclude that Plaintiff's process is credible," which "calls into question [USDOJ's] allegation that the individuals on the October List are 'highly likely to be noncitizen[s].'" Dkt. 149 at 22. As the district court found, "[i]t is well-documented that matching voter registration records with data from other administrative databases presents numerous

challenges." *Id.* at 21 (quotation omitted). And the specific matching protocol the Federal Government describes is highly likely to result in errors. *See* Dkt. 37-2 ¶¶ 13-15 (Oskooii Decl.); Dkt. 131-1 ¶¶ 4-14 (Oskooii Suppl. Decl.). Indeed, USDOJ conceded within days of filings its motion for preliminary relief that there were at least four individuals with a claim to citizenship such that they would have been removed from the list. Hr'g Tr. at 55:19-25.

USDOJ's assertion that Intervenor-Defendants' "expert speaks generally about database matching and does not analyze these data or this process," Motion at 34, is wrong on multiple fronts. Dr. Oskooii's declarations provide as detailed an evaluation as possible given the description provided by USDOJ's declarants, often noting the significance of what the declarants failed to explain. *See, e.g.*, Oskooii Decl. ¶¶ 14-15, 23, 26-41; Oskooii Suppl. Decl. ¶¶ 5, 8, 9, 13, 14 (noting failures of USDOJ declarants to provide critical details regarding the matching process and underlying data). And USDOJ does not argue that Dr. Oskooii's analysis is unreliable. The district court did not abuse its discretion in considering his analysis, nor in finding that the Federal Government's "theoretical risk of imminent harm is

solely due to its own neglect" in waiting months to present this flimsy evidence. Dkt. 149 at 21.

### B. The United States's allegations of noncitizen voting have repeatedly been found unreliable.

As the district court found, "Plaintiff's disproven allegations with respect to noncitizen voting in other states raise further questions of credibility." Dkt. 149 at 22. In July, at the same time DHS sent its letter to California, the agency sent similar letters to New Jersey, Nevada, and Pennsylvania.[8] In Nevada, DHS initially identified up to 15,903 non-citizen registered voters as the supposedly "high-confidence" matches, but later reduced that number to 6,218 and then to 185 after conducting its purported manual review.[9] DHS reported 185 individuals were confirmed noncitizens, but Nevada records contained no evidence that they were noncitizens. And in response to Nevada's requests for additional information, DHS was unable to provide anything of substance to suggest otherwise.[10] The Federal Government's California list has already gone from 190,832 to approximately

---

[8] Press Release, DHS, DHS Secretary Markwayne Mullin Sends Letters to Secretaries of State Warning About Non-Citizens on Voter Rolls (July 17, 2026), https://perma.cc/C5KH-B83G.

[9] Tierney Sneed, *Trump admin files 'long shot' lawsuit after California wouldn't open a thumb drive of alleged non-citizens*, CNN (Oct. 15, 2026), https://www.cnn.com/2026/10/15/politics/trump-doj-sues-california-non-citizens-voting.

[10] Sam Levine, *Nearly 200 people wrongly identified on Nevada's voter rolls as non-citizens*, The Guardian (Sep. 25, 2026), https://perma.cc/9VUK-LWWP.

20,000 without explanation. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). Indeed, as California counties have begun to investigate individuals on the list, they have found the list to be unreliable and replete with errors. Butte County, for example, received a list of 47 names; of which 32 were not on the county's active voter roll and seven lacked sufficient information to match to the roll.[11] Fresno County found the list it received "not particularly legible" and "not in a format that facilitates counting or reviewing," while San Benito County found that, of the 33 names on its list, some were not even registered to vote.[12]

Only this month, another court held that USDOJ's efforts to "demand that states *remove* United States citizens from their rolls" was unlawful in part because the Federal Government had "downplay[ed] the risk of voter disenfranchisement—despite knowingly relying on an inaccurate database to check voter eligibility." *Common Cause v. U.S. Dep't of Just.*, No. 26-1352, 2026 WL 3033772, at *1-2 (D.D.C. Oct. 9, 2026). This repeated inaccuracy weighs against an injunction.

## III. The equities and public interest are squarely against the United States.

An injunction is plainly not in the public interest. The Supreme Court has repeatedly rejected attempts to upend state election procedures on the eve of an

---

[11] Ryan Sabalow & Jeanne Kuang, *What local election officials found in Trump's new claims about California Voters*, Cal Matters (Oct. 27, 2026), https://perma.cc/M5L9-8EED.
[12] *Id.*

election, including during this cycle. *See People Not Politicians v. Onder*, No. 26A388, 2026 WL 2883222, at *2 (U.S. Sep. 25, 2026); *see generally U.S. Postal Serv. v. California*, No. 26A305, 2026 WL 2687160 (U.S. Sep. 14, 2026). Application of *Purcell* preserves the constitutional delegation of authority over elections primarily to States, U.S. Const. art. I, § 4, cl. 1, and protects the franchise by avoiding "voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). And *Purcell* applies with "great[] force here" because "[t]he election is not merely upcoming; it has already started." *Onder*, 2026 WL 2883222, at *2. Especially in this context, and where USDOJ is seeking a mandatory injunction, "the remedy must be workable." *California*, 2026 WL 3212945, at *8 (Bennett, J., concurring).

With the election approaching in *two* business days, USDOJ's ill-defined remedy is anything but workable. Here too, the district court made findings, including that the Federal Government's demand "would force Defendants to create wholly new procedures while the election is already underway," Dkt. 149 at 23, and "'impede the administration of the election for all voters.'" *Id.* (quoting Dkt. 32-3 ¶ 15 (Bhullar Decl.)). These factual findings are subject to clear error review. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014) . Elections officials have been processing returned mail ballots in accordance with state law. Dkt. 32-4 ¶ 24 (Flores Decl.); Cal. Elec. Code §§ 15101-15109, 15111, 31019. Contrary to

USDOJ's glib assertions that they request only modest relief, *see* Motion at 38-39, 41, disrupting these state-mandated procedures by interposing a new USDOJ-approved process by which mail ballots are "segregated" would create chaos and cause disfranchisement. As the district court found, it would "threaten[] both the County and State's abilities to meet statutory deadlines" and thereby "jeopardize the finalization of the election and the ability of newly elected officials to assume their responsibilities." Dkt. 149 at 23-24. The list provided by USDOJ does not contain the same unique identifiers included on the voter files and therefore "[a]ny attempt to associate a name on the October List with a registration record depends on approximate matching of names, dates of birth, and addresses." Dkt. 32-1. This process would also require redirecting staff from other time-critical election duties. Flores Decl. ¶ 38; *see also* Bhullar Decl. ¶¶ 3-4 (describing the possibility as "severe" and "catastrophic"); Dkt. 31-3 ¶¶ 14-16 (Lean Decl.). The district court not only found that this would "risk disenfranchising an untold number of votes" but that the burden would land heaviest on naturalized citizens. Dkt. 149 at 24. These are precisely the dangers *Purcell* seeks to avoid. *See Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (mem.).[13]

---

[13] The only ballot segregation scheme USDOJ cites does not establish the feasibility of the remedy they demand. Motion at 41. In 2020, Pennsylvania segregated ballots received *after the close of polls on Election Day* in anticipation of the final disposition of a lawsuit regarding the validity of those ballots. *See Republican Party of Pa. v. Boockvar*, No. 20A84, 2020 WL 6536912 (U.S. Nov. 6, 2020). There,

Even assuming that segregating ballots in this way was feasible—and it is not—USDOJ has offered no tenable means by which citizenship verification could occur before certification, meaning these voters would undoubtedly "be disenfranchised in the present federal election cycle." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). The public's "deep interest in fair elections" and protecting the fundamental right to vote also weigh against USDOJ. *Lair v. Bullock*, 697 F.3d 1200, 1215 (9th Cir. 2012); *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012) (public interest strongly favors protecting voting rights and "permitting as many qualified voters to vote as possible").

## CONCLUSION

USDOJ's Emergency Motion Under Circuit Rule 27-3 for Injunction Pending Appeal should be denied.

Dated: October 30, 2026 Respectfully submitted,

---

segregation applied to ballots received during a defined period, under procedures already prescribed by Pennsylvania's Secretary of the Commonwealth. *Id.* The segregation in *Boockvar* was based on time and applied to "all ballots received by mail after 8:00 p.m. on November 3," *i.e.*, the disputed ballots were identifiable by a single objective criterion. *Id.* Here, by contrast, USDOJ demands a new process for matching thousands of named voters to individual ballots among millions cast statewide, based on disputed allegations about voters' citizenship. *See supra* Section III. The district court did not abuse its discretion in finding this remedy unworkable. Dkt. 149 at 22-24.

Norman L. Eisen
Tianna Mays
Pooja Chaudhuri
Jacki Anderson
Beauregard Patterson
Jacob Kovacs-Goodman
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Ave. SE #15180
Washington, DC 20003
(202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
pooja@democracydefenders.org
jacki@democracydefenders.org
beauregard@democracrydefenders.org
jacob@democracydefenders.org

Kristen M. Clarke
Anthony P. Ashton
Olivia N. Sedwick
**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE**
4805 Mt. Hope Drive
Baltimore, MD 21215
(410) 580-5777
kclarke@naacpnet.org
aashton@naacpnet.org
osedwick@naacpnet.org

*/s/ Anna M. Baldwin*
Danielle M. Lang
Anna M. Baldwin
Daniel S. Lenz
William Hancock
Sejal Jhaveri
David Kronig
Aseem Mulji
Heather Szilagyi
Robyn K. Bitner
**CAMPAIGN LEGAL CENTER**
1333 New Hampshire Ave. NW
Suite 300
Washington, DC 20036
(202) 736-2200
dlang@campaignlegalcenter.org
abaldwin@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
whancock@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
dkronig@campaignlegalcenter.org
amulji@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
rbitner@campaignlegalcenter.org

Stacey M. Leyton
Danielle Leonard
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
sleyton@altber.com
dleonard@altber.com

Jonah Lalas
**ALTSHULER BERZON LLP**
350 W. Colorado Blvd.
Pasadena, CA 91105
(323) 963-8693
jlalas@altber.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Local Rules 27-1 and 32-3 because it contains 5,583 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman Font.

*/s/ Anna M. Baldwin*
Anna M. Baldwin