No. 26-7231

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff – Appellant,

v.

SERVICES, IMMIGRANT RIGHTS AND EDUCATION NETWORK; et al,

Intervenors - Appellees,

STATE OF CALIFORNIA; et al,

Defendants - Appellees.

# BRIEF OF AMICI CURIAE OREGON, NEW YORK, ARIZONA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAIʻI, ILLINOIS, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, VERMONT, VIRGINIA, AND WASHINGTON

Appeal from the United States District Court
for the Central District of California

DAN RAYFIELD #064790
Attorney General
PAUL L. SMITH #001870
Solicitor General
JONA J. MAUKONEN #043540
Senior Assistant Attorney General
ARIEL T. ASHTAMKER #260068
Assistant Attorney General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4402
ariel.ashtamker@doj.oregon.gov

Attorneys for State of Oregon

# TABLE OF CONTENTS

INTEREST OF *AMICI* AND INTRODUCTION ...............................................1

ARGUMENT ...........................................................................................3

DOJ IS NOT ENTITLED TO THE EXTRAORDINARY REMEDY OF AN INJUNCTION PENDING APPEAL ..............................................................3

A. DOJ's Claims Run Contrary to Federal Law. ..................................3

1. DOJ's assertion of authority is contrary to the Constitution's allocation of authority over elections........... 3

2. DOJ's requested relief would violate the National Voter Registration Act. ......................................................... 6

3. The *Purcell* principle weighs heavily against DOJ's requested relief....................................................................... 8

B. The Equities and Public Interest Weigh Strongly Against an Injunction Pending Appeal.............................................................9

CONCLUSION .........................................................................................13

# TABLE OF AUTHORITIES

## Cases Cited

*Arcia v. Fla. Sec'y of State*,
772 F.3d 1335 (11th Cir. 2014) .......... 6, 7

*Arizona v. Inter Tribal Council of Ariz.*,
570 U.S. 1 (2013) .......... 3

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) .......... 9

*Mi Familia Vota v. Fontes*,
129 F.4th 691 (9th Cir. 2025),
*cert. granted sub nom.*
*Republican Nat'l Comm. v. Mi Familia Vota*,
146 S. Ct. 2799 (2026) .......... 6, 7

*People Not Politicians v. Onder*,
No. 26A388, 2026 WL 2883222 (U.S. Sep. 25, 2026) .......... 8

*United States v. California*,
No. 26-7070, 2026 WL 3212945 (9th Cir. Oct. 26, 2026) .......... 5, 7, 8, 9, 10

## Constitutional and Statutory Provisions

18 U.S.C. § 611 .......... 4, 5

52 U.S.C. § 20507 .......... 4, 6

52 U.S.C. § 20508 .......... 4

52 U.S.C. § 20510 .......... 5

52 U.S.C. § 21111 .......... 5

U.S. Const. art. I, § 4, cl. 1 .......... 3

Ariz. Rev. Stat. Ann. § 16-101 .......... 4

Ariz. Rev. Stat. Ann. § 16-121.01(B) .......... 4

Ariz. Rev. Stat. Ann. § 16-166(F) .......... 4

Ariz. Rev. Stat. Ann. § 16-552(D)-(E) .......... 4

N.J. Stat. Ann. § 19:31-5 .......... 4

N.J. Stat. Ann. § 19:63-17 ....................................................................................4
N.Y. Elec. Law § 5-210 ..........................................................................................4
N.Y. Elec. Law §§ 8-502–8-510.............................................................................4
Or. Rev. Stat. § 247.012..........................................................................................4
Or. Rev. Stat. § 247.171..........................................................................................4
Or. Rev. Stat. § 247.195..........................................................................................4
Or. Rev. Stat. § 254.415..........................................................................................4
Or. Rev. Stat. § 254.426......................................................................................... 4
Wash. Rev. Code § 29A.08.010(1)(f)..................................................................... 4

## Other Authorities

Attorney General Merrick Garland,
*Memorandum for All Department Employees* (June 24, 2024),
https://www.justice.gov/archives/jmd/media/1359366/dl........................12

Donald J. Trump (@realDonaldTrump),
Truth Social (Aug. 18, 2025, at 4:17 a.m. PT),
https://truthsocial.com/@realDonaldTrump/posts/115049485680941254
.....................................................................................................14

*Federal Requests for Statewide Voter Lists*,
National Conference of State Legislatures (Oct. 8, 2026),
https://www.ncsl.org/elections-and-campaigns/federal-requests-for-statewide-voter-lists.........................................................................13

Jacob Wendler,
*Trump says Republicans should 'nationalize' elections*, Politico (Feb. 2, 2026), https://www.politico.com/news/2026/02/02/trump-nationalize-elections-2026-midterms-00760015......................................................14

Office of the Inspector General,
U.S. Department of Justice, *A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election* (June 2018),
https://oig.justice.gov/sites/default/files/reports/18-04.pdf......................12

# BRIEF OF AMICI OREGON, NEW YORK, ARIZONA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAI‘I, ILLINOIS, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, VERMONT, VIRGINIA, AND WASHINGTON

## INTEREST OF *AMICI* AND INTRODUCTION

Amici curiae Oregon, New York, Arizona, Colorado, Connecticut, Delaware, District of Columbia, Hawai‘i, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Vermont, Virginia, and Washington (Amici States) submit this brief supporting Appellees’ opposition to the United States’s emergency motion for an injunction pending appeal from the district court’s denial of a temporary restraining order. Amici States have a profound interest in this case in light of their express constitutional role in administering federal elections in their respective jurisdictions, and the enormous consequences that the Department of Justice’s (DOJ) requested relief would have on state and local election officials.

By bringing this action, DOJ seeks to dramatically and unlawfully expand the power of the Executive branch to interfere with the efficient and orderly administration of state election laws. DOJ’s efforts are contrary to the Constitution’s express allocation of authority to the States to administer elections, subject only to Congress’s limits. They would also undermine the requirements of the National Voter Registration Act (NVRA) and the Help America Vote Act

(HAVA). Indeed, DOJ seeks to claim for the Executive the authority to create new voting requirements and to demand that States enforce those requirements in the middle of an election. That effort is unmoored from any constitutional or statutory provision, directly interferes with an ongoing election, and undermines Amici States' constitutional authority to administer elections.

This case's context further undermines DOJ's entitlement to equitable relief. For months, the President has demanded that Congress impose new burdens on people attempting to register to vote or cast a ballot based on unfounded claims of widespread noncitizen voting. When Congress declined, the President sought to regulate voting through Executive Orders and demands for confidential state voter registration lists. Every court that has considered these efforts has found them unlawful. Now, in the middle of an election, DOJ has sent an untenable demand to state and local election officials in California, seeking to require those officials to violate state and federal law and threatening them with criminal prosecution if they do not comply. When Appellees declined DOJ's demands, DOJ ran to the U.S. District Court for the Central District of California to try and enforce its unlawful demands and disenfranchise thousands of California voters.

The district court denied the temporary restraining order, holding that DOJ lacks constitutional authority to demand that California stop counting votes, that

DOJ's demands would violate federal election law, and that the equities and public interest weigh strongly in favor of California. *See* D.Ct. ECF 149. The Court should deny DOJ's motion for the extraordinary relief of an injunction pending appeal. DOJ's demands that a State disenfranchise voters based on DOJ's belief, unsubstantiated by proof or verification, that a person *might* be a noncitizen, interfere with Amici States' core constitutional authority, undermine the orderly conduct of an ongoing election, and would disenfranchise citizens.

## ARGUMENT

## DOJ IS NOT ENTITLED TO THE EXTRAORDINARY REMEDY OF AN INJUNCTION PENDING APPEAL

### A. DOJ's Claims Run Contrary to Federal Law.

#### 1. DOJ's assertion of authority is contrary to the Constitution's allocation of authority over elections.

The Constitution expressly assigns authority to regulate the manner of conducting federal elections—including the manner of conducting voter registration, managing voter rolls, and verifying and counting ballots—to the States, subject only to limits imposed by Congress through a federal statute. *See* U.S. Const. art. I, § 4, cl. 1; *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-9 (2013).

Pursuant to its constitutional authority, Congress has imposed certain requirements on the States to ensure that voter registration lists are current and accurate and to protect the fundamental right to vote. *See* National Voter

Registration Act of 1993 (NVRA), Pub. L. No. 103-31 (1993); Help America Vote Act of 2002 (HAVA), Pub. L. No. 107-252 (2002). As relevant here, Congress requires that voters registering to vote attest under penalty of perjury that they meet all eligibility requirements, including citizenship. *See* 52 U.S.C. § 20508(b)(2). And Congress requires States to make reasonable efforts to "remove the names of ineligible voters," 52 U.S.C. § 20507(a)(4), while placing important limits on the removal of voters from voter rolls, including a prohibition on the systematic removal of voters within 90 days of a federal election, § 20507(a)(4), (c)(2).

Amici States' own laws include various requirements to ensure that voters are eligible, including by requiring people registering to vote to attest that they are United States citizens or to otherwise provide proof of citizenship. *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 16-101, 16-166(F); N.J. Stat. Ann. § 19:31-5; N.Y. Elec. Law § 5-210; Or. Rev. Stat. §§ 247.012, 247.171; Wash. Rev. Code § 29A.08.010(1)(f). States have also adopted a variety of laws to ensure compliance with citizenship requirements, including processes to challenge voter qualifications. *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 16-121.01(B), 16-552(D)-(E); N.J. Stat. Ann. § 19:63-17; N.Y. Elec. Law §§ 8-502–8-510; Or. Rev. Stat. §§ 247.195, 254.415, 254.426.

Despite these significant, and long-standing, state and federal requirements, DOJ now seeks to invent a novel legal theory based on a federal criminal statute that prohibits noncitizens from voting in a federal election and makes a violation punishable by a fine or imprisonment. *See* 18 U.S.C. § 611. Under DOJ's theory, this criminal prohibition somehow requires state and local officials to comply with DOJ's demands to refuse to process ballots of persons DOJ claims may have been cast by "likely noncitizens." *See* D.Ct. ECF 1 at 13-14. But § 611 plainly does not authorize DOJ to unilaterally impose any such requirement, to override state laws governing voter registration and ballot counting, or to bring a civil action against state and local election officials. *See United States v. California*, No. 26-7070, 2026 WL 3212945, at *10-12 (9th Cir. Oct. 26, 2026) (Bennett, J., concurring); D.Ct. ECF 149 at 13-17. Nor are state election laws any obstacle to DOJ exercising its criminal enforcement authority under § 611, as the district court correctly concluded. D.Ct. ECF 149 at 10-11, 15-17.

Indeed, under DOJ's legal theory, DOJ could demand that state and local officials violate state law by refusing to count ballots during an ongoing election, simply by sending a letter setting forth a list of names and asserting that those individuals are ineligible to vote for any number of reasons. And under DOJ's theory, it could then criminally prosecute state and local officials for

noncompliance. That would fundamentally undermine the States' constitutional authority to regulate voter registration and conduct elections. And it would vastly expand DOJ's power beyond anything contemplated by the NVRA and HAVA. *Cf.* 52 U.S.C. §§ 20510(a) (DOJ can enforce NVRA), 21111 (same for HAVA).

### 2. DOJ's requested relief would violate the National Voter Registration Act.

DOJ's requested relief is also prohibited by the NVRA, which imposes strict requirements on when and how States may remove individuals from their voting rolls before federal elections.

Under the NVRA, any program to "systematically remove" ineligible voters from voting rolls must be completed no later than 90 days before a federal election. 52 U.S.C. § 20507(c)(2)(A). During the statute's 90-day "quiet period," States are required to cease any efforts to systematically remove ineligible voters from voter rolls, including any efforts to cancel registrations through comparisons between registered voters and various databases. *See Mi Familia Vota v. Fontes*, 129 F.4th 691, 716-17 (9th Cir. 2025), *cert. granted sub nom. Republican Nat'l Comm. v. Mi Familia Vota*, 146 S. Ct. 2799 (2026); *see also Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1344 (11th Cir. 2014) (NVRA quiet period applies to "computerized data-matching process").

The reason for the quiet period is straightforward. The time immediately before an election is "when the risk of disfranchising eligible voters is the

greatest." *Arcia*, 772 F.3d at 1346. The cost of false positives is at its apex, as eligible voters who are erroneously removed from voter rolls just days or weeks before an election "will likely not be able to correct the State's errors in time to vote." *Id.*

The 90-day quiet period for the 2026 General Election started in August 2026, about two and a half months before DOJ sent its October 13 letter and filed suit. Indeed, this litigation started well after California had mailed ballots to registered voters and had received and started processing mail-in ballots. *See* D.Ct. ECF Nos. 1, ¶ 44; 15-1. The relief DOJ seeks here would therefore violate the NVRA's clear prohibition on systematic removals of individuals on voter rolls within 90 days of a federal election. *See United States v. California*, 2026 WL 3212945, at *12-13 (Bennett, J., concurring); D.Ct. ECF 149 at 17-19.

As DOJ's own submissions confirm, DOJ wants California to systematically match names on state voter rolls with federal databases and other undisclosed data sources. *See* D.Ct. ECF Nos. 22-2 at 37; 22-8 at 7. DOJ wants this Court to order California to *not count the ballots* unless voters take some additional action that is not required by any state or federal law. D.Ct. ECF Nos. 22-2 at 30-40; 22-8 at 7. This request is the type of "mass computerized data-matching process" that violates the NVRA's quiet period. *See, e.g.*, *Mi Familia*,

129 F.4th at 716; *Arcia*, 772 F.3d at 1344. And it would accomplish the result that the NVRA was designed to prohibit—disenfranchising voters en masse during an election.

### 3. The *Purcell* principle weighs heavily against DOJ's requested relief.

DOJ's requested relief should be rejected for another, independent reason: it would run contrary to the *Purcell* principle, which cautions against federal courts altering the rules of an election on the eve of that election. *People Not Politicians v. Onder*, No. 26A388, 2026 WL 2883222, at *2 (U.S. Sep. 25, 2026) (per curiam); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4-6 (2006) (per curiam). Here, DOJ asks this Court to order California to refuse to process ballots when California state law requires those ballots to be processed and counted. And DOJ makes this request *after* mail-in ballots have already been sent to voters and *after* election officials have already started processing ballots that have been returned. *See* D.Ct. ECF 149 at 25-26; *United States v. California*, 2026 WL 3212945, at *15 (Bennett, J., concurring); *id.* at 16-20 (Sanchez, J., concurring). DOJ's requested relief would "usher in" the kind of "electoral chaos" that the *Purcell* principle is designed to prevent, *see People Not Politicians*, 2026 WL 2883222, at *2, and must be denied.

### B. The Equities and Public Interest Weigh Strongly Against an Injunction Pending Appeal.

The equities and public interest further weigh against DOJ's requested injunction pending appeal for several reasons.

*First*, the relief DOJ seeks would have significant negative effects beyond California. State election officials across the country are already engaged in the "extraordinarily complicated and difficult" task of "[r]unning elections statewide[.]" *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring). If DOJ succeeds here, election officials across the nation would have to prepare for the possibility that DOJ will make similar demands in their States as the election is unfolding, thereby diverting essential resources away from the important work of running elections.

*Second*, DOJ unjustifiably delayed in bringing this action, which weighs against any need for interim relief, as this Court has acknowledged. *See United States v. California*, 2026 WL 3212945, at *4-6 (per curiam). Here, the federal government sent a letter to California in July asserting that there may be "as many as 190,832 non-citizens registered to vote in California." D.Ct. ECF 149 at 3. California responded by requesting additional information, including about the methodology that the federal government used to identify allegedly ineligible voters, before the NVRA's quiet period began in August. *Id.* DOJ failed to respond. Instead, three months later, in mid-October, DOJ sent a letter to

Appellees with a list of approximately 20,000 individuals that it alleged were potentially noncitizens, again without any additional evidence or explanation, demanded that those individuals' ballots be segregated within 48 hours, and threatened criminal prosecution if state and local election officials did not disenfranchise thousands of voters less than 20 days before Election Day. *Id.* at 3-5. And it initiated this litigation to force California to comply. *See United States v. California*, 2026 WL 3212945, at *4-6 (per curiam). If DOJ had credible information regarding noncitizens who were registered to vote, the time to provide it was months ago when California asked, not waiting until after voting has already begun to make demands based on purported beliefs and undisclosed processes. *See* D.Ct. ECF 149 at 21-22.

*Third*, and relatedly, this litigation is inconsistent with DOJ's long-standing practice of "avoid[ing] overt law enforcement and prosecutorial activities close to an election, typically within 60 or 90 days of Election Day." Office of the Inspector General, U.S. Department of Justice, *A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election* at 16-18 (June 2018), https://oig.justice.gov/sites/default/files/reports/18-04.pdf. The purpose of this practice was expressly to "safeguard[] the Department's reputation for fairness, neutrality, and nonpartisanship." Attorney General Merrick Garland,

*Memorandum for All Department Employees* (June 24, 2024), https://www.justice.gov/archives/jmd/media/1359366/dl. DOJ has apparently departed from this long-standing practice without any explanation or even acknowledgement of this prior policy, and it has done so less than a month before Election Day. Its decision to directly interfere in an ongoing election therefore runs contrary to the public interest.

*Finally*, this action represents one of a series of actions taken by DOJ as part of an effort to unlawfully control state election procedures. In 2025, for example, DOJ sent letters to States demanding state voter registration lists containing confidential information about voters, including their driver's license numbers and parts of their Social Security numbers. *Federal Requests for Statewide Voter Lists*, National Conference of State Legislatures (Oct. 8, 2026), https://www.ncsl.org/elections-and-campaigns/federal-requests-for-statewide-voter-lists. Many States requested additional information and offered to provide copies of voter registration lists excluding confidential information. But rather than working cooperatively with States, DOJ sued 30 States. *Id.* DOJ has lost each of those cases decided so far, as courts around the country have concluded that DOJ does not have authority to demand confidential voter information from States. *Id.*

DOJ's efforts to get voter information are part of a broader unlawful effort by the Executive branch to interfere with the manner in which States administer federal elections, including States' decisions to allow mail-in voting. *See, e.g.*, Jacob Wendler, *Trump says Republicans should 'nationalize' elections*, Politico (Feb. 2, 2026), https://www.politico.com/news/2026/02/02/trump-nationalize-elections-2026-midterms-00760015; Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 18, 2025, at 4:17 a.m. PT), https://truthsocial.com/@realDonaldTrump/posts/115049485680941254. The current case is yet another unlawful attempt to interfere with States' duly enacted election laws, including laws governing mail-in ballots. *See* D.Ct. ECF 149 at 6-7. The public interest weighs heavily in rejecting these efforts and rejecting United States's emergency motion for an injunction.

///

///

///

///

///

///

///

///

## CONCLUSION

For the foregoing reasons, this Court should deny the United States's emergency motion for an injunction pending appeal.

Dated: October 30, 2026.

Respectfully submitted,

LETITIA JAMES
*Attorney General*
*State of New York*
BARBARA D. UNDERWOOD
*Solicitor General*
JUDITH N. VALE
*Deputy Attorney General*
ANAGHA SUNDARARAJAN
*Assistant Solicitor General*

Attorneys for State of New York

DAN RAYFIELD
*Attorney General*
*State of Oregon*
PAUL L. SMITH
*Solicitor General*
JONA J. MAUKONEN
*Senior Assistant Attorney General*

/s/ Ariel T. Ashtamker

ARIEL T. ASHTAMKER
*Assistant Attorney General*
ariel.ashtamker@doj.oregon.gov

Attorneys for State of Oregon

KRISTIN K. MAYES
Attorney General of Arizona
2005 N. Central Avenue
Phoenix, AZ 85004

PHILIP J. WEISER
Attorney General of Colorado
1300 Broadway, 10th Floor
Denver, CO 80203

WILLIAM TONG
Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
Attorney General of Delaware
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
Attorney General for the
District of Columbia
400 6th Street, NW, Suite 8100
Washington, DC 20001

ANNE E. LOPEZ
Attorney General of Hawaiʻi
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
Attorney General of Illinois
115 South LaSalle Street
Chicago, IL 60603

AARON M. FREY
Attorney General of Maine
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
Attorney General of Maryland
200 Saint Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
Attorney General of Massachusetts
One Ashburton Place
Boston, MA 02108

DANA NESSEL
Attorney General of Michigan
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
Attorney General of Minnesota
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
Attorney General of Nevada
100 North Carson Street
Carson City, NV 89701

JENNIFER DAVENPORT
Attorney General of New Jersey
25 Market Street
Trenton, NJ 08625

RAÚL TORREZ
Attorney General of New Mexico
408 Galisteo Street
Santa Fe, NM 87501

CHARITY R. CLARK
Attorney General of Vermont
109 State Street
Montpelier, VT 05609

JAY JONES
Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219

NICHOLAS W. BROWN
Attorney General of Washington
P.O. Box 40100
Olympia, WA 98504

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Amicus Brief of Oregon, New York, Arizona, Colorado, Connecticut, Delaware, District of Columbia, Hawai‘i, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Vermont, Virginia, and Washington is proportionately spaced, has a typeface of 14 points or more and contains 2,503 words.

DATED: October 30, 2026

/s/ Ariel T. Ashtamker
ARIEL T. ASHTAMKER #260068
Assistant Attorney General
ariel.ashtamker@doj.oregon.gov

Attorney for State of Oregon

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2026, I directed the Amicus Brief of State of Oregon to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Ariel T. Ashtamker

ARIEL T. ASHTAMKER #260068
Assistant Attorney General
ariel.ashtamker@doj.oregon.gov

Attorney for State of Oregon